## In re FUCHS.

District Court, S. D. New York.
July 2, 1936.

Henry Charles Fuchs, in pro. per.

E. A. LaMothe, U. S. Naturalization Examiner.

HULBERT, District Judge.

The petitioner, Henry Charles Fuchs, was born in Germany on May 24, 1902, and emigrated to the United States in 1928, arriving at the Port of New York in January of that year. His entry was legal.

Petitioner filed his declaration of intention (first papers) on March 30, 1930, and his petition for citizenship (final papers) on February 4, 1936, in which he stated, "I have resided continuously in the United States since January 24, 1928," but set forth certain absences from which it appears that he was in this country for only a total of thirteen weeks from July 22, 1933, to April 19, 1935.

The Bureau of Naturalization objected that the petitioner had not complied with the provisions of the following statute, which, so far as here pertinent, reads as follows:

"No alien shall be admitted to citizenship unless (1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years and within the county where the petitioner resided at the time of filing his petition for at least six months * * *.

"If an individual returns to the country of his allegiance and remains therein for a continuous period of more than six months and less than one year during the period immediately preceding the date of filing the petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship, the continuity of such residence shall be presumed to be broken, but such presumption may be overcome by the presentation of satisfactory evidence that such individual had a reasonable cause for not returning to the United States prior to the expiration of such six months. Absence from the United States for a continuous period of one year or more during the period immediately preceding the date of filing the petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship shall break the continuity of such residence." Act June 29, 1906, § 4, as amended March 2, 1929, § 6 (b), 8 U.S.C.A. § 382.

When this petitioner first arrived in New York, he went to live with an aunt. He secured employment and also attended the City College of the City of New York.

On February 19, 1931, he sailed for Germany to visit his mother and, upon his return in April, he became a student at the New York University and was graduated therefrom in June, 1933, with a Degree of Bachelor of Science.

On his first crossing of the Atlantic, he became acquainted with a fellow passenger, Rose Salger, to whom he was married on July 16, 1933, and a week later he sailed for Germany on the steamship Europa as a "workaway," returning to New York December 30, 1933. Hence, on that occasion, he was absent from this country for a period of five months and seven days. During that time, he attended the Maximillian University at Munich. His stay in the United States was less than thirty days. He testified: "I had to go to the 42nd. Street Library (New York Public Library) and collect data for my Doctor thesis because I was writing on John Dewey, a comparative study between John Dewey and Herbart, a German philosopher."

Petitioner again sailed for Germany on January 28, 1934, and resumed his studies in Munich, where he received his Master's Degree in the summer of 1934 and his Ph. D. in February, 1935. During that period, he returned to New York August 2, 1934, after an absence of six months and four days, remaining until October 7, 1934 (a period of a little more than sixty days), when he again went to Germany and returned to New York on April 19, 1935, after another absence of six months and twelve days.

The petitioner explained that he returned to Germany to complete his education because he, or his mother, had money invested there which, according to the German law, she could not send on or he could not bring back to America and, for the purpose of using up that money, he went over there to continue his studies.

It is indicated in the record that he always intended to return to this country, but other portions of the evidence seem to conflict with that intention.

In a letter written by the petitioner on September 1, 1933, while he was in Germany, to a friend in New York, he stated:

"My ambition to become the title of Doktor has driven me to Germany. It will not be long now to be the Herr Doktor. Then we will celebrate in the old Land of unknown impossibilities.

"How are teaching conditions now in America. Will there be a great demand for German Teachers or is it useless to return to there?

"In that case I will remain here as Teacher in a German Gymnasium, I have good opportunities to get it. Times over here become better and better."

In another letter written some weeks later to the same friend, he said: "My mother asked me to write your father to send me $200 by cable the amount of which she will repay you with interest at the beginning of next year. She also wants me to tell my beloved Mary to visit her at any given time at her disposal. I should say, dear Mary, that you should come in March next year to stay with me till July at my (or our) return to America."

It did not appear then that the petitioner intended to make the visit which he did in December, 1933, for research work at the New York Public Library and, but for which, his continuous absence would have extended beyond the period of one year.

On the other hand, allowing for the time spent aboard ship, the petitioner did not remain in Germany, the country of his allegiance, for a continuous period of more than six months on any one of his three visits there.

[1] The words of the last paragraph of section 382 (quoted above) are free from ambiguity and are binding on the court, as written. While I doubt that the Congress intended that facts such as in the case at bar would be exempt from the prohibitions of this statute, the petitioner's absences have not literally violated either the "six months" or "one year" periods there named and his application cannot be denied on that ground.

 Have they violated the provisions of subdivision (1) of section 382, supra? "Continuous residence" cannot be strictly defined, and it has, quite properly, been liberally construed. The courts have repeatedly held that "physical presence" for the whole five years is not necessary and have allowed exemptions for brief temporary absences where the intention of returning was clear.

However, even before the last paragraph of section 382 was added by the amendment of 1929, the courts held that the "continuity" was broken by more extended absences. In United States v. Kummer (D.C.E.D.N.Y.) 300 F. 106, where the intent to return was conceded, a twenty-six months' absence in one of our

own possessions was held to break the "continuity."

I feel that the three absences in this case also break the continuity of residence and must bar the petitioner's application.

There is another reason for denying the application. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889, held that every applicant for citizenship has the burden of establishing, by satisfactory evidence, that he has the essential qualifications. It also held that when doubt remains in the mind of the court as to any essential matter of fact, the United States is entitled to the benefit of such doubt and the application should be denied.

In view of the evidence before me, there is grave doubt in my mind that the applicant had the intention of returning to this country while he was studying abroad.

The petitioner has not sustained the burden of proof imposed on him, and the application will be denied.